# EXHIBIT 1

Department of Workforce Development
Equal Rights Division
P.O. Box 7997
Madison, WI 53707-7997
Telephone: (414) 227-4384
Fax: (414) 227-4084
TTY: (414) 227-4081

STATE OF WISCONSIN



Department of Workforce Development

**Scott Walker**, Governor
**Raymond Allen**, Secretary

---

DATED AND MAILED    MAR 29 2017

Robin H. Williams
2402 N. Sherman Blvd.
Milwaukee, WI 53210
    Complainant

INITIAL DETERMINATION -
NO PROBABLE CAUSE

vs.

Received
APR 04 2017
Littler Mendelson, P.C.

ERD Case No.CR201604476
EEOC Case No.26G201700190C

Sam's East, Inc.
8050 N. 124th St.
Milwaukee, WI 53223
    Respondent

---

I.    **THE DIVISION DECIDED:**

There is no probable cause to believe that Sam's East Inc. violated the Wisconsin Fair Employment Law ("WFEL"), sec. 111.31--111.395, Stats. by;

    A.     refusing to hire or employ the Complainant because of sex,

    B.     refusing to hire or employ the Complainant because of race, or by

    C.     refusing to hire or employ the Complainant because of national origin/ancestry.

The complaint is therefore <u>dismissed</u>.

II.    **THIS MEANS:**

The Equal Rights Division found no reason to hold a formal hearing on the complaint and is dismissing the complaint.

III.    **THE NEXT STEP IS:**

**The dismissal will become final unless the Complainant submits a written appeal letter to the Equal Rights Division, P.O. Box 7997, Madison, WI 53707-7997. The appeal letter must be <u>received</u> within 30 days of the date this determination was mailed.** (The DATE OF MAILING is stamped at the top of the Initial Determination.) In the appeal letter, the Complainant must state the specific reasons for appealing.

If the Complainant files a timely appeal, this case will be certified for a formal administrative hearing. After the hearing, an Administrative Law Judge will decide if there is probable cause to believe that a violation occurred. A notice of hearing stating the date, time and place of hearing will be sent to the parties. This notice will also include an information sheet, as well as a copy of the statutes and administrative code. At the hearing, the parties will be given the opportunity to present evidence to support

their cases. Neither the Initial Determination, nor the evidence presented to the Equal Rights Division during the investigation of this case, will automatically become part of the record at hearing. <u>The Administrative Law Judge will only consider evidence presented at the hearing.</u> The parties may wish to consult with an attorney for legal advice. The Division will close this case without further action if no timely appeal is received.

IV. DATE OF FILING AND/OR INITIAL WRITTEN CONTACT:

    A. The Complainant first contacted the Division in writing on November 07, 2016 alleging employment discrimination. The Division accepted the Complainant's complaint on November 07, 2016.

V. THE DIVISION DECIDED THERE WAS NO PROBABLE CAUSE BASED ON THE FOLLOWING INFORMATION:

    A. The Respondent properly identified itself as Sam's East, Inc. The Complainant did not dispute this.

    B. The Respondent, owned and operated by Walmart, is an American chain of wholesale clubs. One such club is operated in Milwaukee, Wisconsin.

    C. The Complainant alleged that the Respondent discriminated against her on the bases of sex (female), race (African American) and national origin/ancestry (Jamaican).

    D. In June 2016, the Complainant applied for an Overnight Merchandiser position with the Respondent; Michelle Peterson (Caucasian), Assistant Manager, called the Complainant to schedule an interview on or around June 21, 2016. Unable to make the suggested interview time, the Complainant indicated that she would call Ms. Peterson back with her availability. Over the next two weeks, the Complainant attempted to contact Ms. Peterson, to no avail; frustrated, the Complainant contacted Dan Jenkins, store manager, and informed him of the situation. Ms. Peterson finally got in touch with the Complainant and an interview was scheduled for July 12, 2016.

    On July 12, 2016, the Complainant arrived for her interview; after a 30-minute wait, a supervisor, identified by the Complainant as Shawnte came out and spoke to the Complainant. Shawnte informed the Complainant that Ms. Peterson was too busy to participate in the interview and that she would be conducting it instead. According to the Complainant, the interview went well and Shawnte arranged for the Complainant to meet with Ms. Peterson and LaToya Curry (African American), Assistant Manager, the next day.

    On July 13, 2016, the Complainant arrived for her interview and indicated that Ms. Peterson was, again, a no show. The Complainant, instead, met with Ms. Curry and another supervisor, whom the Complainant identified as an African American male. After a short delay because Ms. Peterson lost the Complainant's pre-employment file, the interview began; the Complainant alleged that, during the interview, the male employee asked her, "Where [she] was from" and "What was [her] accent?" In response, the Complainant stated the he wasn't supposed to ask her that. After the interview, Ms. Curry allegedly informed the Complainant that she would "push [the Complainant] through" and that the Complainant should hear from Ms. Peterson in a few days.

    The Complainant stated that two weeks went by without correspondence from Ms. Peterson; then, the Complainant contacted Ms. Peterson and Ms. Peterson

indicated that she had received no information regarding the interview from Ms. Curry. The Complainant stated that, during the telephone conversation, she heard Ms. Peterson tell someone, "If they remembered talking to the girl with the Jamaican accent." According to the Complainant, Ms. Peterson indicated that she would speak to Ms. Curry and get back to the Complainant; the Complainant stated, however, that Ms. Peterson never got back to her. The Complainant further indicated that she called and left a message for Ms. Peterson, sent a thank you letter on August 3, 2016, sent a certified copy of the thank you letter on August 15, 2016 and sent a certified letter to Mr. Jenkins on September 26, 2016; the Complainant stated that all her correspondence went unanswered.

The Complainant indicated that she was qualified for the Overnight Merchandiser position and stated her belief that the Respondent denied her the position because of her sex, race and national origin/ancestry.

E. The Respondent denied discriminating against the Complainant and stated that the Complainant's protected classes did not play any role in its decision to hire other applicants for the Overnight Merchandiser position; rather, the Complainant was not the best candidate. The Respondent further indicated that all overnight hiring decisions (during the relevant time period) were made by an African American, female manager, who did not know that the Complainant was Jamaican. As well, two of the three associates hired for the Overnight Merchandiser position in July 2016 were African American females; the Respondent further noted that a majority of the associates at the Milwaukee club were also African American females.

F. The Respondent further stated that on or around June 7, 2016, the Complainant applied for the Cashier, Jewelry Sales Associate and Grocery Sales Associate positions at the Milwaukee club. Ms. Peterson thereafter met with the Complainant and the Complainant allegedly indicated that she was only interested in full-time employment. Ms. Peterson further informed the Complainant that the only full-time position available at the club was the Overnight Merchandiser position. The Complainant indicated that she was interested in the position and Ms. Peterson passed her information along to Ms. Curry.

Ms. Curry interviewed the Complainant in July 2016, but did not select her for the position. Ms. Curry denied that she knew the Complainant was Jamaican and further denied that the Complainant's accent was mentioned at any time during the interview. The Respondent noted that Ms. Curry ultimately hired three individuals to serve as Overnight Merchandisers; as stated before, two were female and all were African American. The Respondent further noted that at least one of the hired individuals spoke with an accent.

G. The Complainant disputed the Respondent's account of events and maintained her assertions that Ms. Peterson repeatedly stood her up for interviews and noted her Jamaican accent on a couple of occasions. The Complainant also stated that, contrary to the Respondent's representation, she never met with Ms. Peterson in-person. The Complainant also argued that Ms. Peterson was the principle reason why she was not hired by the Respondent and that Ms. Peterson referenced her accent over the telephone.

H. The Complainant provided a copy of the thank you notes that she submitted to the Respondent; in her note to Mr. Jenkins on September 26, 2016, she stated, "Also, be aware as I communicated to Ms. Latoya in our talk, although I am Jamaican by national origin, I am a [naturalized] U.S. citizen."

VI. INVESTIGATOR'S EXPLAINATION:

A. The Complainant has failed to substantiate her claims that she was discriminated against on the bases of sex, race or national origin/ancestry.

First, it does not appear that the Complainant was discriminated on the bases of sex or race. First, it appears that Ms. Curry was the decision maker when it came to hiring applicants into the Overnight Merchandiser position and was also the individual who decided that the Complainant was not the best candidate for the job; Ms. Curry is an African American Female and is therefore in the Complainant's protected classes when it comes to sex and race. Furthermore, two of the applicants that were hired into the position were African American Females, making it unlikely that the Complainant's sex or race played a role in the Respondent's decision not to hire her.

Second, it does not appear that the Respondent refused to hire the Complainant because of her Jamaican ancestry. The Complainant and the Respondent provide alternative accounts of the Complainant's interview process, but the Complainant alleges that one manager, Ms. Peterson, stood her up and commented on her Jamaican accent on several occasions. The Complainant later alleges that an unidentified African American male referenced her accent in an interview and that she discussed her national origin with Ms. Curry in reference to whether or not she was a naturalized U.S. Citizen. Meanwhile, the Respondent alleges that Ms. Peterson had no part in the Complainant's interview process because the Complainant indicated that she was not interested in the positions that Ms. Peterson is responsible for making hiring decisions for (e.g. part-time Cashier, Jewelry Sales Associate and Grocery Sales Associate positions). The Respondent also maintains that Ms. Curry had no idea that the Complainant was Jamaican, did not hire the Complainant because she was not the best candidate for the job and that one of the individuals hired into the positon also had an accent. Because the Complainant alleges that Ms. Peterson was the main actor and the one who made the alleged, discriminatory statements, and Ms. Peterson played no role in Ms. Curry's decision not to hire the Complainant, it does not appear likely that the Complainant was discriminated against because of her national origin.

Paige Cole
Equal Rights Officer

cc: Complainant
Respondent
Eileen Powers, Attorney for the Respondent