Robin Williams                       The Honorable Pamela Pepper

     Plaintiff                          Case # 18-CV-1355

     vs.

Sam's East, Inc.

     Defendant

---

Plaintiff's Opposition to Defendant's Motion for Summary Judgment

---

## INTRODUCTION AND UNDISPUTED MATERIAL FACTS

Plaintiff is pro se. On June 7 Plaintiff applied for part time position with Sam's East, Inc. (Herein known as the Defendant.) (Plaint. Exh. 1.) The Defendant, parent company is Walmart, Inc.. At that time the Defendant's place of business was located at 7701 W. Calumet Rd, in Milwaukee, Wisconsin. On June 21, 2016, an assistant manager, employed by the Defendant, who identified herself as Michele Peterson, called Plaintiff (not the other way around) and asked Plaintiff to come to the store located at Calumet and Good Hope Rd., that same day for an interview in response to Plaintiff's application.

Plaintiff told Ms. Peterson that Plaintiff could not come to interview with her on such short notice, but that Plaintiff would call her back with some times when Plaintiff would be available to interview with her. Ms. Peterson said that would be fine. Plaintiff believes Plaintiff called that same day and left a message for Ms. Peterson to which Peterson did not reply.

Over the next two weeks, Plaintiff left several messages for Ms. Peterson asking her to call Plaintiff back to arrange an interview, but Peterson never returned Plaintiff's telephone calls. On July 6, 2016 at 4:20 pm, Plaintiff called and spoke to an assistant manager who worked for the Defendant who identified himself as Paul based on Plaintiff's personal notes. (Plaint. Exh 2.) Plaintiff told Paul, Plaintiff had been leaving messages for Ms. Peterson for two weeks after Peterson called Plaintiff to arrange an interview, but that Peterson had not returned Plaintiff messages. He said he'd pass on information on to Ms. Peterson. The next day, July 7, 2016 at 1:03 pm, Ms. Peterson

1

called Plaintiff back. (Plaint. Exh. 3.) There was no apology from Peterson, but a date and time was set up for the **two of us to meet** for July 12, 2016, 2:30 pm.

On July 12, 2016, Plaintiff arrived approximately 25 minutes early for the scheduled interview. Plaintiff met with a lead person or supervisor who identified herself as Shawnte [Perry], who told Plaintiff that Ms. Peterson was **"too busy," to interview Plaintiff this day** and that she would be conducting the first interview in her place. After the interview, which lasted about a half hour, Shawnte said she would arrange a second interview with Ms. Peterson and an assistant manager named LaToya Curry. The second interview was scheduled for the next day, July 13, 2016 at 10:30 pm.

Plaintiff came early for this interview, but again, **Ms. Peterson was a no show**. Plaintiff met with Ms. Curry and a black male lead person whose name Plaintiff did not know at the time. (Plaintiff was to find out his name was Jerry Johnson, a lead person.) The interview was delayed because Ms. Peterson "lost" Plaintiff initial pre-employment paper work so Plaintiff had to fill new application paperwork this July 13, 2016. During the interview (which was conducted on a bench, not a chair with no backs (so there was no "slouching"), Jerry asked Plaintiff where Plaintiff was from and what was Plaintiff's accent. Plaintiff reminded Mr. Johnson that he wasn't suppose to ask Plaintiff this. Johnson replied that he was just curious, or it was just something he noticed or words to that affect. During this interview, Plaintiff never made any comments about being annoyed helping a customer while Plaintiff was working at any previous position.

When the interview was finished, Ms. Curry said that she was impressed and that she would "push me [Plaintiff] through," but that the final decision was up to Ms. Peterson and that Plaintiff would hear from Ms. Peterson in a few days. After over a week had gone by and still not hearing from Ms. Peterson although Plaintiff had left Peterson 1 or 2 messages, Peterson finally called Plaintiff on July 21, 2016, 3:09 pm. (Plaint. Exh. 4.) Ms. Peterson said she had not received any information about Plaintiff's interview from Ms. Curry. At one point Plaintiff heard Ms. Peterson say to someone in the background if **"anyone remembers talking to the *girl with the Jamaican accent*."** Ms. Peterson said she would talk to Ms. Curry and call Plaintiff right back, but Peterson did not.

Plaintiff decided to send a thank you letter, addressed to Ms. Peterson dated August 3, 2016. (Plaint. Exh. 5.) Plaintiff still didn't hear from Ms. Peterson, so Plaintiff left another message, Plaint. Exh. 6, and then sent that same letter via **certified mail** on August 15, 2016, (Plaint. Exh. 7) but again, Plaintiff did not receive a response from Ms. Peterson. (Plaintiff's research indicates the letter was picked up by an employee of the Defendant on August 25, 2016 at 1:46 pm.) (Plaint. Exh. 8.) On September 26, 2016, Plaintiff sent a

2

2nd letter to the Defendant's new location at 8050 N. 124th St., addressed to the store manager, Dan Jenkins. (Plaint. Exh. 9.) Plaintiff never received any communications from Mr. Jenkins.

The three applicants who were supposedly hired in July, 2016 were NOT as qualified as the Plaintiff. Drevonn Morris worked three short term employers-- 5, 7 and 4 months with only the last one having anything that remotely resembled retail experience. (Plaint. Exh. 10.) Nicole Washington was only seeking a full time position when the Defendant communicated no such position existed and listed her last working day of her last employer of 5 months as "7/31/2016," a day that hadn't even taken place yet, based on her July 7, 2016 application date. (Plaint. Exh. 11.)

The most problematic was the application of Titilope Osisanlu. (Plaint. Exh. 12.) Osisanlu, who the Defendant claims spoke with an accent, (but NOT a Jamaican accent) stated she only was looking for a temporary position; had less availability than Plaintiff as she only wanted to work overnight on 5unday, Tuesday and Thursday; did not list her former employer's address and telephone number and had no grocery nor retail experience. Also worth noting is that Morris worked for the Defendant for only 2 1/2 months (7/9/2016 to 9/23/2016) and Osisanlu worked for the Defendant for 5 weeks (7/16/2016 to 8/29/2016) well within the time frame to offer Plaintiff a job. (Plaint. Exh. 13.)

Plaintiff was clearly more qualified for the available position than the three applicants who were hired in July, 2016. It is well documented that the notes from Plaintiff's interviews taken by Ms. Curry were either left blank or discarded, as they do not exist, although the interview comment notes from the other three applicants are filled out.

On November 7, 2016 Plaintiff filed a cross complaint of discrimination with the State of Wisconsin's Equal Rights Division and the United States Equal Employment Opportunity Commission based on sex (female), race (Black) and national origin (Jamaican). Plaintiff withdrew that ERD complaint in person at the ERD office on July 11, 2018. On July 20, 2018, the EEOC issued a "Right to Sue" notice. Plaintiff filed this timely formal complaint in Federal Court on August 31, 2018 based only on national origin. Any previous ERD decision has no bearing on the complaint or lawsuit before this court.

## STATEMENT OF THE ISSUES OR DISCUSSION

The Defendant has presented the most bizarre, fictitious, but easily disproven positions imaginable, even introducing evidence that destroys Defendant's own case.

3

First, Michelle Peterson erroneous swears in her declaration that Plaintiff called Peterson about the Overnight Merchandiser position. (Peterson Declaration 3, pg 2.) This is absurd. Has anyone ever heard of someone filling out an application, then calling the place of business? Clearly, Ms. Peterson contacted Plaintiff, not the other way around. To bring out even more absurdity, in the Defendant's January 11, 2017 position statement conveys that Plaintiff met with Ms. Peterson in person, when this did not happen. The Defendant can't even get the Defendant's story straight.) (Plaint. Exh. 14.)

Ms. Peterson adds to her outright dishonesty by claiming in her declaration, "...nor do I recall her having an accent during our brief exchange." (Peterson Declaration 8, pg 2.) This is comical. First, whenever someone says they "do not recall" something, it is pretty obvious that they really do recall what happened. not only did Peterson make a reference to Plaintiff's accent in a telephone conversation on July 21, 2016 (Plaint. Affidavit 15), another employer questioned Plaintiff about Plaintiff's accent during Plaintiff's second interview in front of Curry. (Plaint. Affidavit 12.) More on these later.

Here's what happened: Ms. Peterson contacted Plaintiff on June 21, 2016 about interviewing for the available position in question. After hearing Plaintiff's accent, Peterson made a near impossible request, asking Plaintiff to come to interview for the position within hours, knowing full well this was highly improbable. When Plaintiff was unable to do so, this gave Peterson her "out." Peterson then thereafter, refused to take or return any of Plaintiff's phone calls about arranging an interview, even though by Peterson's own admission, Peterson received one of the messages. (Peterson Declaration 5, pg 2.) Peterson states that Peterson returned Plaintiff's call (Peterson Declaration 5, pg 2.), but conveniently left out Peterson did so only AFTER Plaintiff spoke to a different assistant manager.

After Plaintiff left several message for Peterson in an attempt to secure an interview, Peterson refused to call Plaintiff back. Plaintiff, after asking to speak to a manager to an assistant manager named Paul. (Plaint. Exh. 2.) (It was later determined that the manager's name was Paul Jasnieski. This name was revealed in a September 4, **2020** discovery answer, after the Defendant claimed FOR YEARS that the Defendant didn't know who this manager was.) (Plaintiff Exh. 15.) 5ame was true of Jerry Johnson who the Defendant also hid from Plaintiff despite numerous discovery inquiries. (Plaint. Exh. 15.)

Peterson states in Peterson's declaration that, "On July 7, 2016, I returned Williams call and arranged for Williams to come to Sam's for an interview." (Peterson Declaration 6,

4

pg 2.) Then in Peterson's next statement, Peterson goes into arranging a July 13, 2016 interview. (Peterson Declaration 7, pg 2.) But Peterson is being misleading here. Peterson fails to communicate to this court, that Peterson arranged a July 12, 2016 interview at 2:30 pm. (Plaint. Exh. 3), an interview Peterson failed to show for. In fact, nowhere in the Defendant's presentation does the Defendant convey to the court, that an interview was scheduled between Plaintiff and Ms. Peterson for July 12, 2016. (Plaint. Exh. 3.) This blatant ommision can not be downplayed or overlooked.

Here's what's irrefutable. Peterson was supposed to meet with Plaintiff for an interview on July 12, 2016 AND July 13, 2016 and failed to show for either of them. In fact, on both occasions, Peterson left word, that she was "too busy" to meet with Plaintiff. Peterson didn't communicate this to Plaintiff once, but TWICE. Who humiliates a potential employee like this? At the first interview on July 12, 2016, which lasted about a half hour, Ms. Perry was so impressed with Plaintiff, that Perry set up an interview for the next day, July 13, 2016. (A half hour meeting is not a talk; it's an interview.)

Here's an example of the Defendant, shooting themselves in the foot. In the Defendant's March 29, 2018 discovery answers, the Defendant records in Interrogatory No. 9 answer: "The Complainant was only interviewed one time and that interview was conducted by Assistant Manager LaToya Curry..." (Plaint. Exh. 16.) But in the Defendant's own March 9, 2018 discovery, submitted to the Plaintiff, the Defendant states in the Defendant's Admissions Request No. 6: "Admit that you [Plaintiff, then the Complaint] interviewed with Sam's on July 12, 2016. (Plaint. Exh. 17.) The Defendant in the Defendant's own words, acknowledges Plaintiff's interview with Shawnte Perry, was just that, an interview.

In those same March 29, 2018 discovery answers from the Defendant in Admissions Request No. 29: "Admit that Michelle [Peterson] called the Complainant [Plaintiff] in July, 2016 and arranged an interview for July 12, 2016. Answer: "Admits." (Plaint. Exh. 18.) In that same document, Admissions Request No. 30 it records: "Admit that Michelle told Complainant [Plaintiff] that she would be present at the interview. Answer: "Admits." The Defendant, holding onto the position that Plaintiff didn't have TWO interviews with the Defendant, would be comical, if it wasn't so easily disproven.

During the second interview scheduled for July 13, 2016 at 10:30 pm, it is undeniable that Ms. Peterson didn't show up for this interview either with Plaintiff meeting with Ms. Curry and a *tire lead person*, Jerry Johnson, who sat in for Ms. Peterson. After filling out pre-employment paperwork that was "lost" by Peterson, Plaintiff engaged in the interview. It was during that time that Johnson asked about Plaintiff accent, which after

informing him that this question wasn't to be asked, the interview went on. (Plaintiff broaches this subject again because Peterson, in Peterson's declaration stated that she "did not recall" Plaintiff having an accent, which clearly is untrue.

After the interview Curry stated that Curry would "push you [Plaintiff] through" an unusual term, but one Plaintiff has consistently communicated Curry said for over 5 years now. But Curry emphasized that the final decision was Peterson's to make and that based on Curry's recommendation, Peterson would be contacting Plaintiff very shortly. After leaving several messages for Peterson, Peterson finally called Plaintiff back, made the ill advised, and discriminatory statement about Plaintiff's accent and then never contacted Plaintiff again.

As a final effort to show an interest in this position, Plaintiff sent a "thank you" letter addressed to Ms. Peterson dated August 3, 2016. (Plaint. Exh. 5.) Plaintiff sent that same letter via **certified mail** on August 15, 2016, (Plaint. Exh. 7) but again, Plaintiff did not receive a response from Ms. Peterson. There is irrefutable evidence that the letter was picked up by an employee of the Defendant on August 25, 2016 at 1:46 pm.) (Plaint. Exh. 8.) Still no word from Ms. Peterson. After years of denying that the letter was received by the Defendant, the Defendant finally admitted that such a thank you letter was sent to the Defendant. Admissions Request No. 60. (Plaint. Exh. 19.) And the ONLY reason the Defendant admitted this, was Plaintiff submitted the verification from the post office (Plaint. Exh. 8.), proving it had been picked up by the Defendant.

On September 26, 2016, Plaintiff sent a 2nd letter to the Defendant's new location at 8050 N. 124th 5t., addressed to the store manager, Dan Jenkins. (Plaint. Exh. 9.) Plaintiff never received an answer from Mr. Jenkins. The Defendant couldn't wiggle out of this one either as indicated in the Defendant's Answer to Admissions Request No. 70. (Plaint. Exh. 20.)

To communicate that the three applicants who were hired in July, 2016 were more qualified than Plaintiff is ridiculous. All of this was covered earlier, so Plaintiff will not rehash it. Also, the Defendant's position that Plaintiff didn't interview well, is the standard, "go to" technique used by almost all employers caught discriminating against qualified applicants. Why? Because it's easy to fabricate and hard to disprove.

**Now Plaintiff would like to broach the subject of FRAUD.** In Plaintiff's application (Plaintiff Exh. 1.) clearly Plaintiff has listed two references. But in LaToya Curry's declaration, she states that Plaintiff only listed ONE references. Why did she do this? Because Curry was presented a false document by the Defendant that only listed ONE

reference. (Plaint. Exh. 21.) Curry was probably shown this phony reference sheet recently, but qualified it as something Curry saw upon reviewing Plaintiff's application 5 years ago. Curry, has absolutely no credibility.

Continuing, the three applicants who were hired ALL had their employment questionnaires filled out and answered at the time of their interviews. However, Plaintiff's employment interview notes are completely blank. (It is cear that the bottom where Plaintiff's application has been used in a previous case where it is marked R 000073 through R 000082. This is a continuation of Plaintiff's application.) Why are there no notes to verify the Defendant's position that Plaintiff interviewed poorly?

Finally, a document marked "Wal-Mart Stores, Inc. Customer Service Scheduling Availability Applicant," dated "11/22/2016" was produced by the Defendant during the ERD complaint, well AFTER Plaintiff filed Plaintiff's complaint with ERD, was something Plaintiff had not seen until it was submitted during the ERD case. (Plaint. Exh. 22.) The court need not be a detective to determine that the Defendant (and perhaps Defendant's counsel) has perpetrated fraud in the case.

## LEGAL ARGUMENT

Clearly the Defendant has practice discriminated against the Plaintiff. Ms Peterson's didn't want to interview, let alone hire Plaintiff. The Defendant's efforts to cover up. Ms Peterson's action is transparent and awkward. But courts, unfortunately are still looking for some sort of overt proof of employer's action. As the U.S. Second Circuit Court of Appeals in Rosen v. Thornburgh, 928 F.2d 528 (2d Cir. 1991) observed, "an employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in a [job applicant's] file, attesting to discriminatory intent."

As the U.S. District Court for the Southern District of Ohio observed in Barr v. Smith & Wollensky Rest. Group, 2006 WL 3391156 (S.D. Ohio Nov. 22, 2006), "one would hardly expect an employer in the [2000's] to tell a female applicant she was not being hired because of her sex." Thus, as pointed out by the U.S. First Circuit Court of Appeals in Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998), " 'smoking gun' evidence is [ ] not required to prove discrimination." Because an employer will rarely admit to a discriminatory motive or leave a paper trial illuminating a discriminatory motive when failing to hire a job applicant, discriminatory failure to hire cases are almost always proven by circumstantial evidence.

To establish a prima facie case of discriminatory failure to hire, as determined by the

U.S. Eleventh Circuit Court of Appeals in Schoenfeld v. Babbitt, 158 F.3d 1257 (11th Cir. 1999), an individual must show that he or she: (1) is a member of a protected class; (2) applied for and was qualified for the job; (3) was not hired despite being qualified for the job; and (4) the position remained open or was filled by a person outside the protected class.

Even when the position is filled by a person who is a member of the job applicant's protected class, courts, such as the U.S. Tenth Circuit Court of Appeals in Anaeme v. Diagnostek, Inc., 164 F.3d 1275 (10th Cir. 1999), have determined that a rejected job candidate can still establish a prima facie case of discriminatory failure to promote by showing that: (1) he or she applied for an available position; (2) he or she was qualified for the position; and (3) he or she was rejected under circumstances giving rise to an inference of unlawful discrimination. Hence, despite what the Defendant claims to be accurate, that Plaintiff was more qualified with two or ALL of the applicants who were hired instead of Plaintiff is emphatically obvious.

If the employer demonstrates that it had a legitimate, non-discriminatory reason, the job applicant must show that the employer's proffered reason for the hiring decision is actually a pretext for discrimination. The job applicant may prove pretext by showing that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of belief.

as explained by the U.S. District Court for the Northern District of Alabama in Miller v. Bed, Bath & Beyond, Inc., 185 F.Supp.2d 1253 (N.D. Ala. 2002), a job applicant is not required to establish that he or she "possessed all of the qualities that the employer might prefer, but did not absolutely require, a candidate to have."

This case is spot on. The Defendant can not show that the other applicants were more qualified than Plaintiff, can not articulate that it had a legitimate, non-discriminatory reason for not hiring Plaintiff and can not dissuade the court that the Defendant reason for the non hirer wasn't pretextual. Plaintiff has shown that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of belief.

## CLOSING

The Defendant clearly has discriminated against Plaintiff due to Plaintiff national origin, Jamaican, based on Plaintiff's determinable accent. Plaintiff does not know why Peterson discriminated against Plaintiff, nor is it necessary for Plaintiff to come up with a

8

motive. Maybe something negatively happened in Peterson's personal life which involved someone of Jamaican descent. But it is clear that Peterson did not want to hire Plaintiff from the minute Peterson heard Plaintiff's Jamaican accent over the phone.

The Defendant keeps communicating that Ms. Curry was the one who made the decision not to hire Plaintiff. The Defendant, in view of the mountains of evidence, has to keep peddling this untruth, in order to have any chance of prevailing. This just doesn't pass the smell test. Plaintiff had not been aware of the Defendant's fabricated interview story about Plaintiff being annoyed about helping a customer until Plaintiff received the Defendant's September 4, 2020 discovery material--FOUR YEARS after filing Plaintiff's ERD complaint. Clearly this story, saying Plaintiff slouched during the interview and that Plaintiff lacked the attributes to perform a **stocker's** position makes absolutely no sense.

If Peterson had no role in Plaintiff's fate, why would Peterson arrange to interview Plaintiff, not once but TWICE--interviews Peterson ultimately did not show up for? Also, if Plaintiff was not under the impression that Peterson was the ultimate decision maker, why would Plaintiff leave numerous calls, messages and even write a letter (**addressed to Peterson**) to find out if Plaintiff had got the job in question? Why would Curry tell Plaintiff that Peterson determines who was hired for that position and that Curry would "push you [Plaintiff] through?"

The Defendant has been dishonest in this case, dating back to the original ERD complaint. The Defendant spent years hiding the names of Defendant's employees from Plaintiff (Jerry Johnson and Paul Jasnieski), despite Plaintiff rightfully requesting this information during discovery; the Defendant has not even produced the actual online ad the Defendant posted for this job, even though Plaintiff has repeatedly requested it.

The Defendant has acted in bad faith. The reason Plaintiff, who besides being pro se, is at a major disadvantage now is because the Defendant purposefully and consistently keeps withholding discovery material. This is why Plaintiff withdrew Plaintiff's complaint in the ERD case. The Defendant's broaching the subject of a 60 day expiration application is not only a Hail Mary" but is laughable

After all, not only did Plaintiff make out new application papers on July 13, 2016, due to Peterson "misplacing" Plaintiff's original application documents, the letters Plaintiff sent to the Defendant dated August 3, 2016 and September 26, 2016 undoubtedly shows Plaintiff was still pursuing this position and proceeding along in the interview process. In addition, based on the applications of the three people who were hired instead of Plaintiff, even a cursory examination of that data shows, beyond the remotest doubt

that Plaintiff was more qualified for this job. Plaintiff ask the court to be mindful that the Defendant has refused to turn over any additional personnel records--a year or so before or a year or two after-- for the period of time when Plaintiff applied for the position in June, 2016.

Finally, the court should take into consideration who most likely is telling the truth. Plaintiff has present incontrovertible proof that the Defendant has falsified documents in this case. Frankly put, with as much civility as possible, it is clear that everyone on the Defendant's side of the table--Curry, Peterson and not including the Defendant's counsel, but especially the Defendant's counsel, has ben playing fast and loose with the truth. It is also worth noting that based on the Defendant's May 22, 2018, Defendant's answer to Interrogatory No. 38, although Curry and Peterson were involuntarily terminated by the Defendant at some point, BOTH are now employed by the Defendant, presently. (Plaint. Exh. 23.)

Plaintiff also motions the court to allow an amended brief be filed once the court rules on Plaintiff's Motion to Compel and Motion for Sanctions and if any additional withheld documents are released by the Defendant.

## CONCLUSION

Based on the previous presented brief to this court, Plaintiff motions the court to deny the Defendant's Motion for summary judgment and if the court decides not to grant Plaintiff's Cross Motion for Summary Judgment, this case should proceed to a trial.

Dated Respectfully, this 1st day of February, 2021.

Robin Williams-Plaintiff Pro Se

2900 W. Highland Blvd., Apt 108
Milwaukee, WI 53208
414-215-3687
williamsrobin539@yahoo.com