UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBIN WILLIAMS,

                Plaintiff,

                                        Case No. 18-cv-1355-pp

  v.

SAM'S EAST, INC.,

                Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 68) AND DISMISSING CASE**

---

The plaintiff, who is representing herself, applied for a part-time position as a stocker with the defendant in June 2016. Dkt. No. 36 at ¶6. After interviewing in July 2016, the plaintiff did not get the position. Id. at ¶¶10-11, 16. The plaintiff, a Black woman with a Jamaican accent, alleges that the defendant unlawfully discriminated against her based on her national origin under Title VII, 42 U.S.C. 2000e, *et seq.* Id. at ¶21.

On December 18, 2020, the defendant filed a motion for summary judgment. Dkt. No. 68. The defendant argues that the plaintiff's claim fails as a matter of law because she was less qualified than the individuals hired by the defendant for the same position and that there is no evidence of pretext. The court will grant the defendant's motion for summary judgment.

## I.    Facts

In opposing the defendant's motion for summary judgment, the plaintiff did not reproduce each numbered paragraph in the defendant's statement of proposed facts, as required by Civil Local Rule 56(b)(2)(B)(i) (E.D. Wis.). Instead,

1

her brief in opposition includes sections titled "Introduction and Undisputed Material Facts" and "Statement of the Issues or Discussion" in which the plaintiff makes assertions about the individuals who took part in the defendant's hiring process. Dkt. No. 80 at 3-7. This filing does not comply with the requirements in Civil L.R. 56(b)(2)(B)(ii), because it includes several facts per paragraph, contains no paragraph numbers and contains more opinions than facts with citations. For example, the first two paragraphs (unnumbered) state:

> Plaintiff is pro se. On June 7 Plaintiff applied for part time position with Sam's East, Inc. (Herein known as the Defendant.) (Plaint. Exh. 1.) The Defendant, parent company is Walmart, Inc.. At that time the Defendant's place of business was located at 7701 W. Calumet Rd, in Milwaukee, Wisconsin. On June 21, 2016, an assistant manager, employed by the Defendant, who identified herself as Michele Peterson, called Plaintiff (not the other way around) and asked Plaintiff to come to the store located at Calumet and Good Hope Rd., that same day for an interview in response to Plaintiff's application.
>
> Plaintiff told Ms. Peterson that Plaintiff could not come to interview with her on such short notice, but that Plaintiff would call her back with some times when Plaintiff would be able to interview with her. Ms. Peterson said that would be fine. Plaintiff believes Plaintiff called that same day and left a message for Ms. Peterson to which Peterson did not reply.

Dkt. No. 80 at 1.

The plaintiff also filed an affidavit which generally forms a more detailed version of her complaint with attachments. Dkt. No. 81. The paragraphs in the affidavit do not cite to any of the attachments. The attachments appear to be the exhibits cited to in the plaintiff's "Statement of the Issues or Discussion," because the documents attached to the affidavit have exhibit numbers handwritten in the top-right corner of each page. Dkt. No. 81 at 6-66. This filing also does not comply with Civil L.R. 56(b)(2)(B)(ii).

The defendant provided the plaintiff with the rules governing how to respond to a summary judgment motion when the defendant filed its motion for summary judgment. Dkt. No. 68 at 1-8. Because the plaintiff has not individually addressed each of the defendant's proposed findings of fact, as required by the rules, the court will deem the defendant's version of the facts as largely uncontroverted. Fed. R. Civ. P. 56(c); Civil L.R. 56(b)(5). The court will use the facts in the defendant's proposed findings of fact, dkt. no. 70, and the plaintiff's sworn amended complaint, dkt. no 36, which the court construes as an affidavit for purposes of summary judgment, see Beal v. Beller, 847 F.3d 897, 901 (7th Cir. 2017).

A.    Background

On June 7, 2016, the plaintiff submitted an online application to work for the defendant. Dkt. No. 70 at ¶1. The plaintiff is an adult female of Jamaican descent with a Jamaican accent. Dkt. No. 36 at ¶¶3, 5. The defendant is a chain of retail warehouse clubs owned by Walmart, Inc. Dkt. No. 70 at ¶2.

Employment applications to the defendant are valid for sixty days. Id. at ¶6. The defendant understood that the plaintiff's June 7, 2016 application was set to expire on August 6, 2016. Id. at ¶7. The defendant says that on June 21, 2016, the plaintiff called Michelle Peterson, the Manager in Training, about the position. Id. at ¶8. During their conversation, Peterson invited the plaintiff to come for an interview that day, but the plaintiff was unable to interview that day and told Peterson she would call her back at a later time to arrange an interview. Id. at ¶8-9. The plaintiff left several voicemails for Peterson over the next two weeks but did not hear back from Peterson until July 7, 2016, at which time Peterson called the plaintiff and the two set up an interview. Id. at

3

¶¶10-11. The plaintiff says the interview was scheduled for July 12, 2016. Dkt. No. 36 at ¶9. The plaintiff asserts that she was "fully qualified" for the position. Id. at ¶6. The position required primarily unloading trucks and stocking shelves, but there would be some customer interaction, especially around the holidays. Dkt. No. 70 at ¶¶20-21.

The defendant lists several company priorities relevant to its employees. It mentions that a "customer-first focus" is part of "Sam's Core Value of Service to the Customer." Id. at ¶28. Additionally, the defendant has "Three Basic Beliefs, as outlined in its Statement of Ethics." Id. at ¶29. These basic beliefs are "respect for the individual, service to our customers and striving for excellence." Id. Underlying these beliefs are the qualities of "confidence, self-motivation, discipline, and passion." Id. at ¶30.

B.    The Interview

The plaintiff says she had an interview on July 12, 2016 with "assistant manager Shawnte (African American but without a Jamaican accent)." Dkt. No. 36 at ¶10. She says that she met with Shawnte because Peterson did not have time that day. Id. The defendant does not mention this interview but says that on July 13, 2026, the plaintiff interviewed with LaToya Curry, the Overnight Assistant Manager, and Jerry Johnson, the Team Lead, for an Overnight Merchandiser position. Dkt. No. 70 at ¶¶12-13. The plaintiff agrees that she had an interview on the thirteenth with Curry and a male supervisor "because Peterson again did not show." Dkt. No. 36 at ¶11.

Curry was looking to hire someone with "consistent third shift availability." Dkt. No. 70 at ¶17. She was responsible for hiring third shift retail employees and did not need approval from a supervisor to hire employees to her shift. Id. at ¶¶13-14. Curry reviewed the plaintiff's application prior to their

interview and noticed that the plaintiff had indicated her availability for third shift work was limited to only three days per week—Wednesdays, Thursdays and Saturdays. Id. at ¶¶15-16.

During the plaintiff's interview with Curry, Curry observed several things she found concerning. The plaintiff had held a cashier position for three months with Save A Lot and did not provide a reason for why she left. Id. at ¶18. This was followed by an eight-month employment gap before her next position. Id. The plaintiff provided only a single employment reference when the application had asked for two. Id. at ¶19. Curry thought that the plaintiff "did not perform well during her interview;" the plaintiff slouched in her chair and seemed to lack confidence and enthusiasm for the position and the company. Id. at ¶22. When Curry read questions from the Hiring Questionnaire used in the defendant's interview process, she found plaintiff's answers to be unsatisfying. Id. at ¶¶23-25. The first question asked the plaintiff to "describe a time when [she] had to make a customer-facing decision quickly without all of the information [she] needed." Id. at ¶26. The plaintiff responded that "she was once stocking clothing at Boston Store and a customer interrupted her and asked [the plaintiff] to get something for them. [The plaintiff] said she retrieved the item, but expressed to Curry that she was annoyed by the request because it interrupted her work." Id. at ¶27. To Curry, the plaintiff's response indicated she may not have the "customer-first focus" the defendant was looking for in its employees. Id. at ¶¶28-29. Curry left the interview with the impression that the plaintiff lacked the qualities she was seeking: "confidence, self-motivation, discipline, and passion." Id. at ¶30. At the end of the interview, Curry told the plaintiff that she was "'going to try to push [the plaintiff] through, but it's up to

5

[Peterson] to make the final decision.'" Id. at ¶36. The plaintiff therefore believed Peterson was the decision-maker for hiring. Id.

The plaintiff reports that during the interview the male supervisor asked about her Jamaican accent; the plaintiff asserts that she "discussed [her] national origin about whether or not [she] was a naturalized U.S. Citizen." Dkt. No. 36 at ¶12. The plaintiff says that Curry told her she would be recommended for the job, but that Peterson had the final decision and would call the plaintiff the next day. Id. The plaintiff says that despite leaving several messages, she did not hear from anyone until July 21, 2016 when she spoke with Peterson over the phone. Id. at ¶¶13-14. The plaintiff says that she heard Peterson ask someone in the background about the plaintiff's Jamaican accent and that Peterson promised to call the plaintiff the next day but did not. Id. at ¶14.

The plaintiff says she sent two letters to the defendant to show her interest but did not get a response. Id. at ¶15. She asserts that the defendant then filled the position with less qualified individuals without Jamaican accents and not of Jamaican descent. Id. at ¶16.

C.    The Plaintiff's Concerns

The defendant says that at the plaintiff's deposition, the plaintiff said that Johnson asked her "'[w]hat's that accent from?'" Dkt. No. 70 at ¶31. The plaintiff responded to Johnson, "You're not supposed to ask that in an interview." Id. at ¶32. This was the only question or comment during the interview relating to the plaintiff's accent. Id. at ¶33. The plaintiff understood that Johnson was not responsible for the hiring decision. Id. at ¶35.

After her interview, the plaintiff left Peterson two or three voicemails. Id. at ¶37. Peterson returned her call on July 21, 2016 and at some point during

6

the call asked someone in the background, "'Anybody remember talking to the girl with the Jamaican accent?'" Id. at 39. Peterson told the plaintiff that she had not yet heard from Curry and would follow up with Curry before calling the plaintiff back. Id. at ¶40. This was the only other comment made by anyone employed by the defendant about the plaintiff's accent. Id. at ¶41.

D.    Rejection

Instead of the plaintiff, Curry decided to hire three other individuals for the overnight merchandiser position. Id. at ¶¶44-45. The defendant identifies the three individuals by their initials: D.M., N.W. and O.T. Id. at ¶45. All three individuals are Black or African-American and O.T. speaks with an accent. Id. at ¶46. The defendant prioritizes a "customer first," friendly attitude in entry level positions. Id. at ¶48. The three candidates showed intangibles that Curry preferred. D.M. came off as "high energy and extremely friendly" during his interview, and Curry observed what she believed to be high motivation. Id. at ¶54. N.W. asked detailed questions about the position which showed motivation, and his responses to questions were "customer-centric." Id. at ¶60. O.T. talked about her experience helping coordinate childcare for her siblings while attending school. Id. at ¶57.

Although the plaintiff believes she was more qualified than the three who were hired, she bases this opinion entirely on the cumulative duration of her retail experience (about fourteen months) and her beliefs about the other candidates' levels of experience. Id. at ¶¶49-51, 61. The defendant says D.M. had twenty months' retail experience, had no employment gaps and was available to work any shift, seven days a week. Id. at ¶¶51-53. O.T. was available to work any shift four days a week and evenings the other three days a week. Id. at ¶56. N.W. had over five years' retail experience, no gaps in

7

employment and was available to work third shift seven days a week. Id. at ¶¶58-59. The plaintiff admits that she has no personal knowledge of how her qualifications compare to the other candidates. Id. at ¶61.

E.    EEOC Charge

On November 7, 2016, the plaintiff filed a Charge of Discrimination with the Wisconsin Equal Rights Division and the EEOC. Id. at ¶62. In her charge, the plaintiff "asserted a discriminatory failure to hire claim based on [her] race (African-American), sex (female), and national origin (Jamaican) discrimination." Id. at ¶63. The Wisconsin Equal Rights Division issued an initial determination of No Probable Cause on March 29, 2017. Id. at ¶64. In it, the Division stated:

> First, it does not appear that the [plaintiff] was discriminated on the bases of sex or race. First, it appears that Ms. Curry was the decision maker when it came to hiring applicants into the Overnight Merchandiser position and was also the individual who decided that the [plaintiff] was not the best candidate for the job; Ms. Curry is an African American Female and is therefore in the [plaintiff's] protected classes when it comes to sex and race. Furthermore, two of the applicants that were hired into the position were African American Females, making it unlikely that the [plaintiff's] sex or race played a role in the [defendant's] decision not to hire her.

> Second, it does not appear that the [defendant] refused to hire the [plaintiff] because of her Jamaican ancestry. The [plaintiff] and the [defendant] provide alternative accounts of the [plaintiff's] interview process, but the [plaintiff] alleges that one manager, Ms. Peterson, stood her up and commented on her Jamaican accent on several occasions. The [plaintiff] later alleges that an unidentified African American male referenced her accent in an interview and that she discussed her national origin with Ms. Curry in reference to whether or not she was a naturalized U.S. Citizen. Meanwhile, the [defendant] alleges that Ms. Peterson had no part in the [plaintiff's] interview process because the [plaintiff] indicated that she was not interested in the positions that Ms. Peterson is responsible for making hiring decisions for (e.g. part-time Cashier, Jewelry Sales Associate and Grocery Sales Associate positions). The [defendant] also maintains that Ms. Curry had no idea that the [plaintiff] was

8

Jamaican, did not hire the [plaintiff] because she was not the best candidate for the job and that one of the individuals hired into the position also had an accent. Because the [plaintiff] alleges that Ms. Peterson was the main actor and the one who made the alleged discriminatory statements, and Ms. Peterson played no role in Ms. Curry's decision not to hire the [plaintiff], it does not appear likely that the [plaintiff] was discriminated against because of her national origin.

Id. at ¶64. The plaintiff then appealed her decision and an ALJ held a hearing on July 11, 2018. Id. at ¶65. After the hearing, the plaintiff withdrew her charge and requested a Right to Sue letter from the EEOC. Id. The EEOC issued a Dismissal and Notice of Rights on July 20, 2018. Id. at ¶66.

On August 31, 2018, the plaintiff filed her complaint in federal court. Id. at ¶67. The plaintiff's complaint drops her previous claims of discrimination based on race and gender, alleging only a claim of discrimination based on national origin. Id.

## II. Procedural Background

The plaintiff filed her complaint on August 31, 2018. Dkt. No. 1. The defendant filed a motion to dismiss on May 24, 2019. Dkt. No. 14. The court set a motion hearing for the motion to dismiss for November 26, 2019.

On June 26, 2019, the plaintiff filed a "Motion to Permit a Consultant to Speak for Plaintiff" in which she asked the court to permit Melvin Reed, "a friend and consultant, who has some limited experience in legal matters like this, to speak fully and completely on Plaintiff's behalf." Dkt. No. 18. The plaintiff responded to the defendant's motion to dismiss on June 26, 2019, dkt. no. 19, and by June 10, 2019, the motion was fully briefed, dkt. no. 21. On July 31, 2019, the plaintiff filed a "Motion to be Appointed Counsel" in which she asked for the court to appoint her an attorney. Dkt. No. 24. The court denied both of the plaintiff's motions on November 19, 2019. Dkt. No. 30.

9

On November 26, 2019, the court held the hearing on the defendant's motion to dismiss. Dkt. No. 33. The court granted the defendant's motion without prejudice and ordered the plaintiff to file an amended complaint by January 3, 2020. Id. The court extended the deadline for the plaintiff's motion, giving the plaintiff until January 17, 2020. Dkt. Nos. 34, 35.

The plaintiff did not file her amended complaint until January 20, 2020. Dkt. No. 36. The next day, the court received a letter from the plaintiff, explaining that she had worked on the amended complaint with a discrimination attorney, Janet Heins, and that the attorney was at fault for the complaint being three days late. Dkt. No. 37. On January 23, 2020, the court ordered the plaintiff and Ms. Heins to appear and show cause as to whether Ms. Heins represented the plaintiff and, if so, whether Ms. Heins's failure to sign the amended complaint violated Fed. R. Civ. P. 11(A). Dkt. No. 38. The court set a hearing on the matter for January 30, 2020. Id. The defendant then filed a motion for an extension of time to answer the amended complaint. Dkt. No. 39. On January 29, 2020, the court received a letter from Ms. Heins explaining that she did not represent the plaintiff but that she had provided *pro bono* assistance in helping the plaintiff draft her complaint. Dkt. No. 42. Ms. Heins blamed herself for the tardy filing of the amended complaint and explained that she had filed the amended complaint through her PACER account, which she did not believe violated any rules. Id.

On January 29, 2020, the court deemed the amended complaint timely filed and granted the defendant's motion for an extension of time to answer. Dkt. No. 43. The defendant filed its answer on February 14, 2020. Dkt. No. 46. On March 12, 2020, the court put in place a discovery schedule ordering that dispositive motions were due by December 18, 2020. Dkt. No. 51.

On September 14, 2020, the plaintiff filed a "Second Motion to be Appointed Counsel." Dkt. No. 56. She filed a "Follow up Motion to be Appointed Counsel" one month later. Dkt. No. 58. On October 19, 2020, the plaintiff filed a "Motion to Allow Melvin Reed to be Present at Plaintiff's October 27, 2020 Deposition With the Defendant." Dkt. No. 61. On October 22, 2020, the court denied all three motions. Dkt. No. 62.

On December 2, 2020, the court granted a joint motion for protective order. Dkt. No. 65. On December 4, 2020, the plaintiff filed a motion to compel and motion for sanctions. Dkt. no. 67. The defendant filed its motion for summary judgment on December 18, 2020, the deadline for dispositive motions. Dkt. No. 68. On January 11, 2021, the plaintiff asked for an extension of time to file an answer to the defendant's motion. Dkt. No. 78. The plaintiff filed her motion for summary judgment on February 2, 2021. Dkt. No. 82. The plaintiff also filed an "Affidavit" that day, which included numerous exhibits. Dkt. No. 81.

On September 27, 2021, the court denied the plaintiff's motion to compel and motion for sanctions and denied the plaintiff's cross motion for summary judgment because it was untimely and failed to comply with Civil L.R. 56. Dkt. No. 93. In granting the plaintiff's motion for an extension of time, the court found that the plaintiff's February 2, 2021 opposition materials (dkt. nos. 80, 81) were timely filed. Id.

III.    **Parties' Arguments**

A.    The Defendant's Motion

The defendant asserts that the plaintiff does not have evidence that would permit a reasonable factfinder to conclude that the defendant didn't hire her because of her national origin. Dkt. No. 69 at 3. It specifically attacks the

plaintiff's allegations based on her qualifications compared to the other candidates and addresses the absence of pretext.

While asserting that retail experience was not the most important factor in the defendant's hiring decisions, the defendant argues that the plaintiff was less qualified than the applicants who were hired. Id. It asserts that the plaintiff had "*less* retail and customer service experience than two of the three selected applicants, and only comparable experience to the third (who also spoke with an accent)." Id. (emphasis in the original).

The defendant says that Curry hired three individuals for the Overnight Merchandiser position for which the plaintiff had also interviewed. Id. She ultimately hired D.M. (who was African American), O.T. (who was African American) and N.W. (who was African American) Id. at 3-4. The defendant argues that Curry was impressed by D.M.'s attitude and energy, and his availability covered all shifts, every day of the week. Id. In addition, the defendant points to D.M.'s roughly two years of customer service experience. Id. at 4. The defendant also discusses how N.W. asked detailed questions about the position and "provid[ed] customer-centric responses to interview questions that demonstrated her years of customer service experience." Id. N.W. had over five years of customer service experience and was able to work the third shift any day of the week. Id. The defendant discusses that O.T. exuded confidence and determination during her interview with Curry. Id. Further, the defendant says that O.T., who speaks with an accent, had a "commanding personality demonstrat[ing] to Curry that she knew how to get things done," even if she had less customer experience than D.M. and N.W. Id. According to the defendant, O.T. was available to work any shift four days a week as well as evenings the other three days. Id.

12

The defendant contrasts the three hires with the plaintiff. The defendant says that the plaintiff slouched during her interview and lacked outward confidence and a showing of excitement about the position and the company. Id. The defendant also notes the plaintiff's limited third shift availability, gap in employment and decision to provide one reference rather than the two requested on the application. Id.; Dkt. No. 70 at ¶19.  The defendant says that it also was concerned with the answer the plaintiff gave to an interview question seeking insight into candidates' customer service qualities. Dkt. No. 69 at 4-5. The defendant asserts that the plaintiff's response demonstrated she "did not possess the customer-first focus demanded by Sam's Core Value of Service to the Customer." Id. at 5. From the interview, Curry believed the plaintiff lacked "confidence, self-motivation, discipline, and passion," the qualities sought by the defendant that underlie its Three Basic Beliefs. Id.

The defendant also argues that a candidate's previous amount of retail experience was not a dispositive factor in its hiring decision. Id. Rather, it says that "Curry sought highly motivated, charismatic individuals to fill this entry-level role." Id. The defendant asserts that the plaintiff nonetheless had less retail or customer service experience than two of the candidates hired and "only slightly more than the third." Id. Further, referring to O.T., the defendant says "[i]t defies logic that Sam's East would discriminate against [the plaintiff] because she spoke with an accent, yet hire an individual who also spoke with an accent." Id. The defendant asserts that the plaintiff simply was not the better candidate for the position and that her claim fails as a matter of law. Id.

The defendant next argues that even if the plaintiff could make a *prima facie* case of discrimination, the defendant had a legitimate, non-discriminatory

13

reason for its employment decision and that the plaintiff has offered no evidence of pretext. Id. at 6. The defendant lays out its reason as

> [the defendant] did not select [the plaintiff] for the position, in part, because she did not show the "customer first" spirit or friendly, outgoing attitude during her interview that [the defendant] values in Associates. Those selected for the position were more charismatic and responded to interview questions more favorably than [the plaintiff]. The selected applicants also had broader third shift availability than [the plaintiff]."

Id. at 6. The defendant says the plaintiff's personal belief that she was more qualified than the other candidates is not based in evidence and is insufficient to rebut the evidence that Curry considered personality traits, interview responses and availability. Id. at 7 (citing Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994)).

The defendant argues that the burden is on the plaintiff to provide evidence that the defendant's reasons were pretextual. Id. The defendant cites Riley v. Elkhart Cmty. Schs., 829 F.3d 886 (7th Cir. 2016), as a case with similar facts. Id. The defendant says that the plaintiff has provided no such evidence but anticipates that she will argue that the two comments about her accent were discriminatory and support a finding of pretext. Id. at 8. The defendant contends that those comments "fail to demonstrate pretext," because they were not derogatory and there is nothing showing a connection between the comments and the defendant's hiring decision. Id. The defendant quotes Perez v. Thorntons, Inc., 731 F.3d 699, 709 (7th Cir. 2013): "'[s]tanding alone, biased comments do not establish discriminatory motive unless they were made by the decision maker and can be connected to the decision.'" Id. The defendant says that Johnson, who asked "[w]hat's that accent from?," was not a decision maker in the hiring of Overnight Merchandisers. Id. at 9. It further asserts that the plaintiff has not provided any evidence showing that Peterson's

14

comment, "[a]nybody remember talking to the girl with the Jamaican accent?," was connected to the defendant's hiring decision. Id.

The defendant also provides an analysis through the lens of Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016), examining the evidence as a whole. Id. at 9. It asserts that the plaintiff's only evidence of discrimination is her belief that she was better qualified than those who received the position and the two comments on her accent. Id. The defendant says that it has shown the former is incorrect and that the latter do not demonstrate discriminatory motivation. Id. at 9-10. As to the latter, the defendant cites Hasham v. Cal. State Bd. of Equalization, 200 F.3d 1035 (7th Cir. 2000), to demonstrate the high bar plaintiffs face when arguing discrimination based on comments about national origin. Id. at 10.

B.    The Plaintiff's Response

The plaintiff responds that the defendant did not "want to interview, let alone hire Plaintiff." Dkt. No. 80 at 7. The plaintiff's argument first focuses on her apparent belief that overt proof is not necessary to show discrimination. Id. The plaintiff quotes several cases to support this notion. Id. (quoting Rosen v. Thornburgh, 928 F.2d 528, 533 (2nd Cir. 1991) ("an employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in a [job applicant's] file, attesting to discriminatory intent."); Barr v. Smith & Wollensky Rest. Grp., No. 2:04-CV-01131, 2006 WL 3391156, *4 (S.D. Ohio Nov. 22, 2006) ("one would hardly expect an employer in the [2000's] to tell a female applicant she was not being hired because of her sex."); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 171 n.13 (1st Cir. 1998) ("'smoking gun' evidence is [] not required to prove discrimination.")). The plaintiff argues that circumstantial evidence suffices. Id.

15

The plaintiff also argues that the defendant's justifications are merely pretext, id. at 8, but she does not offer any evidence in support of her assertion. Instead, the plaintiff cites a case from the Northern District of Alabama, Miller v. Bed, Bath & Beyond, Inc., 185 F. Supp. 2d 1253, 1266 n.12 (N.D. Ala. 2002), stating "a job applicant is not required to establish that he or she 'possessed all of the qualities that the employer might prefer, but did not absolutely require, a candidate to have.'" Id. The plaintiff then says,

> [t]he Defendant can not show that the other applicants were more qualified than Plaintiff, can not articulate that it had a legitimate, non-discriminatory reason for not hiring Plaintiff and can not dissuade the court that the Defendant reason for the non hirer wasn't pretextual. Plaintiff has shown that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of belief.

Id.

The plaintiff then makes factual arguments but does not cite to the complaint or the defendant's statement of facts. Id. at 8-10. She first reiterates her allegation that the defendant discriminated against her based on her accent. Id. at 8. She says she does not need to offer a motive, but speculates that "[m]aybe something negatively happened in Peterson's personal life which involved someone of Jamaican descent." Id. at 8-9. The plaintiff next challenges the defendant's contention that Curry was the decision maker in the hiring process as well as Curry's statements about her interview with the plaintiff. Id. at 9. She questions why Curry would tell her that Peterson would be making the decision if it were not true. Id. Referring to her interview with Curry, the plaintiff also states that she "had not been aware of the Defendant's fabricated interview story about Plaintiff being annoyed about helping a customer until Plaintiff received the Defendant's September 4, 2020 discovery material--FOUR YEARS after filing Plaintiff's ERD complaint" and asserts that "[c]learly this

story, saying Plaintiff slouched during the interview and that Plaintiff lacked the attributes to perform a stocker's position makes absolutely no sense." Id.

The remainder of the plaintiff's brief asserts that the defendant has been dishonest, hiding names of its employees from the plaintiff, and has acted in bad faith, withholding discovery material and putting the plaintiff at a "major disadvantage." Id. Neither of these arguments are relevant at the summary judgment stage. Any discovery issues should have been addressed during the discovery period.[1]

### C.    The Defendant's Reply

The defendant's reply restates many of its original arguments. Dkt. No. 83. The defendant asserts that the plaintiff produced no evidence supporting her allegation of discrimination. Id. at 4. The defendant says that the plaintiff "relies solely" on the two comments allegedly made during the hiring process referring to her accent, one by Johnson and one by Peterson. Id. It argues that the plaintiff has spun a tale of "conspiracy through leaps in logic and meritless accusations of fraud." Id. at 5.

The defendant reiterates that the plaintiff's belief that she was more qualified than the other candidates does not rebut Curry's testimony on that issue. Id. at 6 (citing Millbrook v. IBP, Inc., 280 F.3d 1169, 1181 (7th Cir. 2002) ("A plaintiff's contention that he is the better candidate for a vacancy constitutes nothing but the employee's own opinion as to his qualifications. This cannot create an issue of material fact because '[a]n employee's perception of his own performance . . . cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities.'") (citation omitted)).

---

[1] The court denied the plaintiff's motion to compel and motion for sanctions regarding the defendant's responses to discovery requests. Dkt. No. 93.

Accordingly, the defendant asserts that the plaintiff has offered nothing to support the defendant's stated reasons were pretextual. Id. at 7.

## IV.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting

18

Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

## V.    Analysis

Under Title VII, it is unlawful to refuse to hire an individual because of his or her national origin. 42 U.S.C. §2000e-2(a)(1). To prove a *prima facie* case of discrimination for failure to hire, the plaintiff must show "'(1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the employer hired someone outside the protected group who was not better qualified than the plaintiff.'" Chatman v. Bd. of Ed. of the City of Chi., 5 F.4th 738, 746 (7th Cir. 2021) (quoting Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church, 733 F.3d 722, 728-29 (7th Cir. 2013)). "At summary judgment, the critical question is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's [national origin] caused the adverse employment action." Id. (citing Purtue v. Wis. Dep't of Corr., 936 F.3d 598, 602 (7th Cir. 2020)). The court must put all the evidence into a single pile and evaluate it as a whole. Ortiz, 834 F.3d at 765.

Once the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Chatman, 5 F.4th at 746 (citing Johnson, 733 F.3d at 728); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "For a failure-to-hire claim, one example of a legitimate, nondiscriminatory reason a

defendant may offer is that 'the individuals ultimately hired were better candidates' than the plaintiff." Id. (quoting Skiba v. Ill. Cent. R.R. Co., 884 F.3d 708, 724 (7th Cir. 2018)). If the defendant satisfies its burden, the burden shifts back to the plaintiff to show through evidence that the defendant's reasons and explanations are mere pretext for discrimination. Id. at 746-47 (citing Johnson, 733 F.3d at 728; Hitchcock v. Angel Corps, Inc., 718 F.3d 733, 740 (7th Cir. 2013)).

The defendant does not deny that the plaintiff was a member of a protected class, that she applied for and was qualified for the position or that she was rejected for the position. Rather, the defendant's arguments focus on the fourth prong's requirement that the defendant hired someone "who was not better qualified than the plaintiff," as well as the plaintiff's burden to establish that the defendant's reasons and explanations were mere pretext for discrimination.

The plaintiff's assertion that she was more qualified than the other candidates is not supported by evidence. Dkt. No. 36 at ¶16. The defendant has established that it values employees with both experience and a "'customer first' friendly attitude," with more weight given to the latter. Dkt. No. 70 at ¶48. The facts show that the plaintiff had less experience than two of the candidates and that in her interview she failed to demonstrate the qualities the defendant sought in hiring for the position. The plaintiff had about fourteen months of experience in retail and customer service at the time she interviewed. Id. at ¶50. Her availability for the position was also limited to three days per week. Id. at ¶17.

According to the record, candidate D.M. had nineteen months of customer service experience and N.W. had over five years of customer service

20

experience. Id. at ¶¶51, 58. Both D.M and N.W. were available for third shift work seven days a week. Id. at ¶¶53, 59. The defendant described D.M as "high-energy and extremely friendly" with a "'get up and go' attitude." Id. at ¶54. N.W. demonstrated that she was motivated through her detailed questions about the position. Id. at ¶60. Meanwhile, during the plaintiff's interview, Curry was concerned with the plaintiff's responses to questions about customer-facing decision-making. Id. at ¶26. The plaintiff has not offered any evidence that she was more qualified—either through experience or attitude—than D.M. or N.W. The third candidate, O.T., who spoke with an accent, had only six months of customer-service work. Id. at ¶55. However, she was available to work any shift four days a week and evenings the other three days and she demonstrated maturity and responsibility in her interview. Id. at ¶56-57. The plaintiff has admitted that she has no personal knowledge of how her qualifications compared to those of other candidates. Id. at ¶61. Instead, the plaintiff relies solely on her belief that she had more retail experience. Id. This belief is not evidence, and does not give rise to a genuine dispute of fact. Robertson v. Dep't of Health Services, 949 F.3d 371, 381 (7th Cir. 2020) (citing Rabinovitz v. Penau, 89 F.3d 842, 487 (7th Cir. 1996)).

There is no genuine dispute of material fact regarding whether the defendant hired less qualified individuals over the plaintiff. The defendant did not do so, and it is entitled to judgment as a matter of law.

Even if the plaintiff had offered evidence giving rise to a genuine dispute of material fact over whether she was more qualified, she has not shown that the defendant's explanation as to its hiring decision is pretext. The defendant stated that the candidates it hired were more charismatic, performed better in their interviews and had greater third shift availability than the plaintiff. Dkt.

21

No. 69 at 6. The plaintiff offers nothing to suggest otherwise aside from her belief that she was more qualified and that two statements were made regarding her accent during the hiring process.

The evidentiary bar for pretext is high. Riley, 829 F.3d at 894. "Evidence of [the plaintiff's] qualifications 'only would serve as evidence of pretext if the differences between her and [the other candidates] were so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was *clearly better qualified* for the position at issue.'" Id. (quoting Hobbs v. City of Chi., 573 F.3d 454, 462 (7th Cir. 2009) (citation omitted)). As to comments made about the plaintiff's accent, the Seventh Circuit has stated that biased comments, without more, are insufficient to establish discriminatory motive without a causal connection. Perez, 731 F.3d at 709. "[I]solated comments that are no more than 'stray remarks' in the workplace are insufficient to show bias toward [someone] in the workplace." Merillat v. Metal Spinners, Inc., 470 F.3d 685, 694 (7th Cir. 2006) (citing Cullen v. Olin Corp., 195 F.3d 317, 323 (7th Cir. 1999)). Nevertheless, particular remarks can "support an inference that unlawful bias motivated the decision-maker, such as when those remarks are made by the decision-maker or one having input in a decision, and are made '(1) around the time of, and (2) in reference to, the adverse employment action complained of.'" Id. (quoting Hunt v. City of Markham, Ill., 219 F.3d 649, 652-53 (7th Cir. 2000)).

As the court already has determined, the plaintiff's conclusory remarks about her qualifications in comparison to the other candidates are insufficient to raise a genuine dispute of material fact. Robertson, 949 F.3d at 381. Even if the court were to take the plaintiff's belief as fact, her performance during the interview, as recounted by the defendant, was insufficient to earn her the

22

position over the other candidates, two of which had even more experience. Experience was not the only quality the defendant sought for the position. The plaintiff has not offered any evidence to show that she was "clearly better qualified" than the other candidates.

Nor are the alleged comments made by the defendant's employees evidence of pretext. Of the two alleged comments made about the plaintiff's accent, neither bears any reference to the defendant's decision to not hire the plaintiff. Johnson's alleged question to the plaintiff asking "[w]hat's that accent from?" shows no discriminatory motive and does not appear to have anything to do with the final employment decision. The plaintiff offers no evidence to the contrary. The same is true of Peterson's alleged question asking individuals in the background of a phone call, "[a]nybody remember talking to the girl with the Jamaican accent?" The question, on its face, is neither discriminatory nor tied to the defendant's hiring decisions. Again, the plaintiff offers no evidence to the contrary.

The cases the plaintiff cites are consistent with the court's analysis. The three cases the plaintiff cites when discussing types of evidence merely support the position that direct evidence is not needed to prove a Title VII discrimination claim, as the discrimination can be proved on circumstantial evidence under the McDonnell Douglas framework. Rosen v. Thornburgh, 928 F.2d 528, 533 (2nd Cir 1991) ("A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence."); Barr, 2006 WL 3391156, *4 ("[P]laintiffs claiming disparate treatment may, alternatively, establish their cases through inferential and circumstantial proof.") (citing McDonnell Douglas, 411 U.S. 792); Hodgens, 144 F.3d at 171 n. 13 (1st Cir.

1998) ("Such evidence is rarely found in today's sophisticated employment world . . . so discriminatory motive is more often demonstrated through indirect evidence under the McDonnell Douglas framework."). But the plaintiff has offered no circumstantial evidence indicating that she was discriminated against based on her accent. Further, the plaintiff's citation to <u>Miller</u> misunderstands the language of that opinion. The court in <u>Miller</u> discussed how it was presuming the plaintiff was qualified for the positions she sought by promotion, not whether she was more qualified than the other candidates. <u>Miller</u>, 185 F. Supp. 2d at 1266-67. The defendant here has not argued that the plaintiff was unqualified for the position.

There is no genuine dispute of material fact regarding whether the defendant's justification for its decision not to hire the plaintiff was pretext. The defendant is entitled to judgment as a matter of law.

The court will grant the defendant's motion for summary judgment and dismiss the case with prejudice.

## VI. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 68.

The court **ORDERS** that the case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 29th day of March, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

24